**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION OF THE PUBLIC DEFENDER SERVICE FOR THE DISTRICT OF COLUMBIA TO UNSEAL CERTAIN RECORDS | Misc. Action No. | Case: 1:21−mc−00008<br>Assigned To : Contreras, Rudolph<br>Assign. Date : 1/30/2021<br>Description: Misc. |

## PETITION TO UNSEAL RECORDS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

I.    INTRODUCTION ......................................................................................... 1

II.   FACTUAL BACKGROUND.......................................................................... 3

III.  ARGUMENT .............................................................................................. 4

    A.    The First Amendment supports unsealing the records............................. 7

    B.    The Common Law supports unsealing the records................................. 12

    C.    Applying the *Hubbard* factors supports unsealing. ............................... 16

        1.    The Need for Public Access. ....................................................... 16

        2.    Extent of Previous Public Access. .............................................. 18

        3.    Objections to Disclosure. ........................................................... 18

        4.    Strength of Privacy Interests. ..................................................... 19

        5.    Possibility of Prejudice. ............................................................. 21

        6.    Purpose of Information. .............................................................. 21

IV.  CONCLUSION ......................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Civil Liberties Union v. Holder*,
  673 F.3d 245 (4th Cir. 2011) ........................................................................ 10

*Brown & Williamson Tobacco Corp. v. F.T.C.*,
  710 F.2d 1165 (6th Cir. 1983) ...................................................................... 11

*Cable News Network, Inc. v. Fed. Bureau of Investigation*,
  984 F.3d 114, 2021 WL 68307 (D.C. Cir. 2021) ........................................ 13, 16, 19, 20, 21

*Comm. for Pub. Counsel Servs. v. Att'y Gen.*,
  480 Mass. 700 (2018) .................................................................................... 17

*EEOC v. Nat'l Children's Ctr., Inc.*,
  98 F.3d 1406 (D.C. Cir. 1996) ..................................................................... 2, 14, 16, 19

*Ex Parte Drawbaugh*,
  2 App. D.C. 404 (1894) ................................................................................. 12

*Friedman v. Sebelius*,
  672 F. Supp. 2d 54 (D.D.C. 2009) ................................................................ 21

*Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*,
  No. 09-CV-882 (WJH), 2016 WL 5231805 (M.D. Tenn. Sept. 20, 2016) .......... 8

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ........................................................................................ 20

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.*,
  457 U.S. 596 (1982) ...................................................................................... 8

*Guttenberg v. Emery*,
  26 F. Supp. 3d 88 (D.D.C. 2014) .................................................................. 19, 20

*Hamen v. Islamic Republic of Iran*,
  318 F. Supp. 3d 194 (D.D.C. 2018) .............................................................. 17

*Hicklin Eng'g, L.C. v. Bartell*,
  439 F.3d 346 (7th Cir. 2006) ........................................................................ 5

*Hyatt v. Lee*,
  251 F. Supp. 3d 181 (D.D.C. 2017) .............................................................. 17

*In re Application of Leopold*,
  300 F. Supp. 3d 61 (D.D.C. 2018) ................................................................ 4, 19, 20, 21, 22

*In re Fort Totten Metrorail Cases*,
  960 F. Supp. 2d 2 (D.D.C. 2013) .................................................................. 14, 19

*In re Leopold*,
    964 F.3d 1121 (D.C. Cir. 2020)................................................................ 3, 4, 12, 13

*In re Nat'l Broad. Co.*,
    653 F.2d 609 (D.C. Cir. 1981)................................................................ 1

*In re Providence Journal Co.*,
    293 F.3d 1 (1st Cir. 2002)................................................................ 13

*In re Reporters Comm. for Freedom of the Press*,
    128 F. Supp. 3d 238 (D.D.C. 2015)................................................................ 1, 2

*In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*,
    707 F.3d 283 (4th Cir. 2013) ................................................................ 13

*In re Wash. Post Co.*,
    576 F. Supp. 76 (D.D.C. 1983) ................................................................ 1

*League of Women Voters of United States v. Newby*,
    963 F.3d 130 (D.C. Cir. 2020)................................................................ 14

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) ................................................................ 8

*MacroMavens, LLC v. Deutsche Bank Sec., Inc.*,
    No. 09-CV-7819 (PKC), 2011 WL 1796138 (S.D.N.Y. Apr. 27, 2011)............................ 14

*Metlife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017)................................................................ 5, 14

*Newsday LLC v. Cty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013) ................................................................ 3, 11

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) ................................................................ 12

*Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty.*,
    478 U.S. 1 (1986) ................................................................ 5, 7, 8

*Press-Enter. Co. v. Superior Court of Cal.*,
    464 U.S. 501 (1984) ................................................................ 3, 5, 7

*Procter & Gamble Co. v. Bankers Trust Co.*,
    78 F.3d 219 (6th Cir. 1996) ................................................................ 11

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ................................................................ 7

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
    825 F.3d 299 (6th Cir. 2016) ................................................................ 8

*Siedle v. Putnam Invs., Inc.*,
  147 F.3d 7 (1st Cir. 1998)..........................................................................20

*United States ex rel. Durham v. Prospect Waterproofing, Inc.*,
  818 F. Supp. 2d 64 (D.D.C. 2011)...........................................................20, 21

*United States ex rel. Thomas v. Duke Univ.*,
  No. 17-CV-276 (CCE), 2018 WL 4211375 (M.D.N.C. Sept. 4, 2018)........................11, 14

*United States v. Ausby*,
  916 F.3d 1089 (D.C. Cir. 2019)....................................................................17

*United States v. Brice*,
  649 F.3d 793 (D.C. Cir. 2011)......................................................................7

*United States v. Bulger*,
  283 F.R.D. 46 (D. Mass. 2012) ...................................................................15

*United States v. Cohen*,
  366 F. Supp. 3d 612 (S.D.N.Y. 2019) ..........................................................11

*United States v. El-Sayegh*,
  131 F.3d 158 (D.C. Cir. 1997)..............................................................7, 13, 18

*United States v. Gonzalez*,
  927 F. Supp. 768 (D. Del. 1996) ..............................................................6, 10

*United States v. Greene*,
  No. 18-CR-16 (D.D.C. Dec. 21, 2018) ........................................................18

*United States v. Harris*,
  204 F. Supp. 3d 10 (D.D.C. 2016)..........................................................19, 21

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980)...............................................4, 15, 16, 18, 19, 22

*United States v. Huntley*,
  943 F. Supp. 2d 3837 (E.D.N.Y. 2013) .......................................................20

*United States v. Martoma*,
  No. 12-CR-973 (PGG), 2014 WL 164181 (S.D.N.Y. Jan. 9, 2014) ......................20

*United States v. Murray*,
  No. 16-CR-176 (RDM), 2018 WL 3025044 (D.D.C. June 15, 2018)....................18

*United States v. Silver*,
  No. 15-CR-93 (VEC), 2016 WL 1572993 (S.D.N.Y. Apr. 14, 2016).............8, 13, 20

*United States v. Stevens*,
  No. 08-CR-231 (EGS), 2008 WL 8743218 (D.D.C. Dec. 19, 2008) ......................9

*Virginia Dep't of State Police v. Wash. Post*,
   386 F.3d 567 (4th Cir. 2004) .............................................................................. 11

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
   89 F.3d 897 (D.C. Cir. 1996)................................................................. 12, 13, 15

*Wash. Post v. Robinson*,
   935 F.2d 282 (D.C. Cir. 1991).................................................................... 7, 18

*Xereas v. Heiss*,
   No. 12-CV-456 (DAR), 2017 WL 3600390 (D.D.C. Aug. 18, 2017)................................ 2

## Statutes

   5 U.S.C. § 552a ........................................................................................ 12

## I.   INTRODUCTION

The Public Defender Service for the District of Columbia ("PDS"), through undersigned counsel, petitions the Court, pursuant to D.C. LCrR 57.6, for an Order unsealing certain records of this Court.[1]  Specifically, PDS seeks the unsealing of the following exhibits that were filed with the Court and were cited in the Court's opinion (ECF. No. 103) granting the government's motion *in limine* and denying the defendant's motion *in limine*:

- ECF No. 83-3
- ECF No. 83-4 ("10/21/2011 DEA Report")
- ECF No. 83-5 ("10/28/2013 DEA Report")
- ECF No. 83-6 ("4/24/2019 USAO Disclosure Letter")
- ECF No. 83-7 ("9/11/2017 DEA Report")
- ECF No. 83-8 ("Fuentecilla Police Report")
- ECF No. 83-10 ("11/13/2017 DEA Report")
- ECF No. 83-11 ("Fuentecilla Police Interview")
- ECF No. 83-19 ("Pillard Police Interview")

The Court previously denied Defendant Zanders' request to unseal those (and other) records — a motion that PDS supported as *amicus curiae* — reasoning that a protective order agreed to by the parties and endorsed by the Court "require[d] that the exhibits at issue be filed under seal unless the [Protective] Order is modified."  Mem. Op. at 15, Dkt. No. 103, *United States v. Zanders*, 16-CR-197 (RC) (D.D.C., Nov. 26, 2019).[2]  The Court found that there was not "good cause" to modify the Protective Order (the standard that the Court deemed applicable), concluding

---

[1]    It is this Court's practice to permit non-parties to seek unsealing of court documents through the opening of a new miscellaneous matter.  *See, e.g.*, *In re Wash. Post Co.*, 576 F. Supp. 76, 77 n.1 (D.D.C. 1983) (re-filing a motion to intervene in a criminal case as a separate miscellaneous matter "as is the practice in this court" (citing *In re Nat'l Broad. Co.*, 653 F.2d 609 (D.C. Cir. 1981)); *see also In re Reporters Comm. for Freedom of the Press*, 128 F. Supp. 3d 238, 239 (D.D.C. 2015) (applicants filed a miscellaneous action requesting that the court unseal docket entries in a criminal case).

[2]    Unless otherwise noted, all "Dkt. No." references in this petition refer to dockets in *United States v. Zanders*, 16-CR-197 (RC) (D.D.C.).

that it would "undermine the utility of Consent Protective Orders" if the Court were to unseal the records filed on the docket. Mem. Op. at 15.

The District Court should unseal the records. The District Court's opinion denying unsealing erred by applying the standard for modifying a protective order to a motion to unseal documents filed with, and relied upon by, the Court. That was error because a protective order governs only the production of documents between two litigants, while a motion to unseal documents filed with the Court implicates both the First Amendment and the common law right of public access to judicial proceedings. Both the First Amendment and the common law framework inform the sealing analysis, which requires the party opposing public disclosure to bear the burden of demonstrating that sealing is justified in light of the "strong presumption in favor of public access to judicial proceedings." *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996); *see also Xereas v. Heiss*, No. 12-CV-456 (DAR), 2017 WL 3600390, at *2 (D.D.C. Aug. 18, 2017) (explaining that the objecting party has the burden of rebutting the strong presumption in favor of disclosure). The Court erred by utilizing neither of these frameworks and by improperly placing the burden of proof on Mr. Zanders to show good cause as to why the documents should be unsealed.

Both the First Amendment and the common law analysis support unsealing the records. Under the First Amendment framework, the Court asks (1) whether the public has a qualified First Amendment right of access to the documents in question and (2) whether the party seeking sealing has demonstrated an overriding interest that sealing is both essential to preserving higher values and is narrowly tailored to serving that interest. *In re Reporters Comm.*, 128 F. Supp. 3d at 241. Under the common law analysis, the Court determines whether (1) the document sought is a "judicial record" and, if so, (2) whether the "strong presumption in favor of public access" to

judicial records is "outweighed by competing interests." *In re Leopold* (*Leopold II*), 964 F.3d 1121, 1127 (D.C. Cir. 2020).

Both frameworks support unsealing here. Importantly, in light of the significant interest in public access to the courts, both tests impose a "higher threshold" than the "good cause" standard required for issuance of a protective order. *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 160, 166 (2d Cir. 2013). In other words, the fact that the litigants entered into a protective order is not dispositive under either framework. Accordingly, the government must move beyond the protective order to show an "overriding interest" that "closure is essential to preserve higher values" and is "narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of Cal.* ("*Press-Enter. I*"), 464 U.S. 501, 510 (1984) (quotation marks and citation omitted). The government cannot do so, and the Court should unseal the records

## II.   FACTUAL BACKGROUND

On January 28, 2019, the Court approved a Consent Protective Order Governing Discovery of Designated Drug Enforcement Administration Materials ("Protective Order") proposed by the parties. Dkt. No. 43. The Protective Order placed limits on the dissemination of certain discovery materials produced by the United States. Most relevantly, the Protective Order provided that

> Absent prior consent from the government, any papers filed with the Court referencing DESIGNATED DRUG ENFORCEMENT ADMINISTRATION materials shall file under seal references to the DESIGNATED DRUG ENFORCEMENT ADMINISTRATION materials.

*Id.* at 4, ¶ 8.

On August 22, 2019, Mr. Zanders filed a motion *in limine* to Exclude Evidence of the drug analysis. Dkt. No. 82. In this motion, Mr. Zanders also moved to modify the Protective Order to allow him to publicly file exhibits containing documents the government provided as discovery under the Protective Order. *Id.* at 1. The sealed documents in question concerned evidence of

misconduct at the lab in Dulles, Virginia (the "Dulles lab") where the substances allegedly seized from Mr. Zanders were analyzed. *Id.* The government has acknowledged that the misconduct detailed in the documents currently under seal directly relates to "[a]bout a hundred" criminal cases in the District of Columbia's Superior Court. Dkt. No. 25, Ex. G to Zander's Mot. to Compel, at 25. On November 26, 2019, the Court denied Mr. Zanders' motion to unseal the misconduct documents so that they could be filed publicly. Mem. Op. at 16–17.

### III. ARGUMENT

Petitioner's right to access the records under seal springs from both the First Amendment and the common-law tradition. The District Court's opinion in *In re Application of Leopold (Leopold I)*, 300 F. Supp. 3d 61 (D.D.C. 2018), *rev'd on other grounds*, 964 F.3d 1121 (D.C. Cir. 2020), sets forth the analysis under these "[d]ifferent analytical frameworks." *Leopold I*, 300 F. Supp. 3d at 80. Both the common-law analysis and the First Amendment analysis employ two-prong tests. Unsealing is warranted under the First Amendment if the Court finds that (1) "a qualified right of access exists" and (2) an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest trumps any qualified right of access that attaches." *Id.* at 80–81. Unsealing is warranted under the common law if the Court concludes that (1) "the document sought is a public record" and (2) on balance, the "public's interest in disclosure" outweighs "the government's interest in keeping the document secret." *Id.* at 81. To apply the second prong of the common-law analysis, courts in this Circuit weigh "six generalized factors, enumerated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), and any relevant particularized factors in determining the precise weight to be assigned to the always strong presumption in favor of public access to judicial proceedings." *Leopold I*, 300 F. Supp. 3d at 81 (cleaned up).

Undergirding both the common-law tradition and the First Amendment right is "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). Unlike "[t]he political branches of government," which "claim legitimacy by election, [a] judge[']s" legitimacy derives solely "by reason." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006). "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Id.* "Although the right [of public access] is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests." *Metlife, Inc.*, 865 F.3d at 663.

The importance of public access is at its zenith in criminal cases. Time and again, the Supreme Court has emphasized the history of open trials that predates even the founding. In *Press-Enterprise II*, the Supreme Court recounted the "early history of England's open trial." *Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty.* ("*Press-Enter. II*"), 478 U.S. 1, 8 (1986). The Court explained: "The public trial, one of the essential qualities of a court of justice in England, was recognized early on in the Colonies." *Id.* (internal quotation marks omitted). Those values are enshrined in the common law and in the First Amendment:

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Press-Enter. I*, 464 U.S. at 508. Those values provide the background for the First Amendment and common-law right to public access, both of which support granting the instant Petition.

Courts have applied both the common law and the First Amendment to unseal documents in strikingly similar postures as this case.  In *United States v. Gonzalez*, 927 F. Supp. 768, 785 (D. Del. 1996), the Court found that the common law and the First Amendment inquiries separately required unsealing of documents related to misconduct by government forensic scientists.  In that case, the government sought to seal allegations that "certain chemists and other laboratory personnel at the FBI had engaged in, *inter alia*, evidence tampering, violations of FBI laboratory analysis protocols, and the issuance of scientific opinions without proper empirical bases. The documents consisted of 129 Bates-stamped pages containing allegations directed at [an analyst]." *Id.* at 771.  The parties agreed to a protective order to facilitate production of the documents related to the FBI chemist's misconduct.  *Id.* at 772.  The defendant filed a motion on the basis of those documents; the appendix containing the documents produced under protective order was filed under seal.  *Id.*  A local newspaper sought unsealing of the allegations, but the government opposed, citing an "ongoing Justice Department investigation," the "privacy and reputation interests" of individuals named in the documents, and the existence of the protective order.  *Id.* at 772–73.  The *Gonzalez* Court soundly rejected each argument, ordered unsealing, and explained that

> those concerns of institutional or individual embarrassment are far outweighed by the absolute necessity of allowing the light of public scrutiny to shine brightly upon government agencies, the courts, and the judicial process, so that the citizenry may be fully informed.  While potentially embarrassing and inconvenient to both governmental agencies and their personnel, it is a small price to pay for trial adjudication to achieve the objective of maintaining public confidence in the administration of justice.

*Id.* at 784 (internal quotation marks omitted).  The reasoning of the *Gonzalez* Court applies powerfully here.

### A. The First Amendment supports unsealing the records.

Courts utilize a two-step framework to assess the validity of a claimed First Amendment right of access. *See Press-Enter. II*, 478 U.S. at 8–9. The inquiry's first step, sometimes called the "experience and logic" test, is to determine whether a qualified right of access exists. *Id.* at 9. "The public possesses a qualified First Amendment right of access to judicial proceedings where (i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding." *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980)). The D.C. Circuit has recognized "monitoring prosecutorial or judicial misconduct" as an important function of public access. *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997) (citation omitted).

The inquiry's second step is to determine whether an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest" nonetheless overrides any qualified right of access that attaches. *Press-Enter. II*, 478 U.S. at 9 (quoting *Press-Enter. I*, 464 U.S. at 510). "Where there is a First Amendment right of access to a judicial proceeding, the 'presumption of access can be overridden only if (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.'" *Brice*, 649 F.3d at 796 (quoting *Wash. Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991)).

The public has a qualified right of access to the materials under seal here — which were filed in support of a motion *in limine* and relied upon by the Court in its ruling — and thus meet the first prong of analysis. "Motion *in limine* practice has historically been open to the press and

general public . . . ."  *United States v. Silver*, No. 15-CR-93 (VEC), 2016 WL 1572993, at *4 (S.D.N.Y. Apr. 14, 2016) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006)).  "Motions *in limine* can [] be critical to the course of a trial," *Silver*, 2016 WL 1572993, at *4,  and "are potentially dispositive because excluding evidence may defeat a claim or defense," *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 09-CV-882 (WJH), 2016 WL 5231805, at *5 (M.D. Tenn. Sept. 20, 2016).  Motions *in limine* "involve the issues of admissibility or exclusion of evidence," *id.*, and "[p]ublic access . . . to evidentiary decision making . . . 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'"  *Silver*, 2016 WL 1572993, at *4 (quoting *Press-Enter. II*, 478 U.S. at 9).

In this case, the materials for which Petitioner seeks unsealing were filed in support of a motion *in limine* and attest to significant misconduct by law enforcement that may have compromised prior criminal convictions.  The Court relied upon those sealed documents in denying the motion.  To maintain the documents in question under seal would both contravene the history of open access to motion *in limine* practice and undermine public confidence in the fairness of the system as a whole.

Turning to the second prong of the First Amendment inquiry, there is no "overriding interest" in maintaining these documents under seal.  Under this prong, the party seeking sealing — here, the government — bears a "heavy" burden to put forward "[o]nly the most compelling reasons [that] can justify non-disclosure of judicial records."  *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016); *see also Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982) ("Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is

necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."). The government does not come close to meeting this high bar.

In the government's response to Mr. Zanders' motion to unseal (Dkt. No. 98 ("Gov't Resp.")), the government cited a few interests in sealing: the sensitive nature of the misconduct investigation; the existence of a protective order; and the protections of the Privacy Act. Gov't Resp. 4–7. But those interests do not add up to a "compelling governmental interest" that outweighs the public's First Amendment rights to access.

That the documents in question concern "investigations into [government] employee misconduct," Gov't Resp. 7, actually favor disclosure. This Court held as much in *United States v. Stevens*, No. 08-CR-231 (EGS), 2008 WL 8743218, at *8 (D.D.C. Dec. 19, 2008), where the Court ordered unsealing of documents related to prosecutorial misconduct on the public's First Amendment grounds. In that case, the Court explained "the important function of monitoring prosecutorial misconduct, especially where, as here, motions made during the trial raised such allegations and the complaint specifically includes allegations of such misconduct." *Id.* Indeed, *Stevens* rejected many of the arguments that the government raised in its response. In *Stevens*, the government sought to seal records related to an *ongoing* Office of Professional Responsibility investigation that, in the government's view, "could threaten or impede ongoing investigations" if made public. *Id.* at *4. The *Stevens* Court "flatly reject[ed] the government's position," *id.*, holding that "[w]hile the Court recognizes the competing interests at issue and the sensitive nature of the information, it cannot be said that these interests represent higher values than the defendant's and the public's rights previously discussed," *id.* at *8 (internal quotations omitted). The Court should do the same here, particularly where the investigations are completed and thus the nature of the sealed information is less sensitive than that in *Stevens*.

The government's interest in the investigation is also diminished here because much of the investigation and its charges are already public.  Where "the substance of [the] allegations against individuals" in the underlying records "has been widely publicized," the privacy interests are "substantially diminished by the widespread media coverage of [those] general allegations." *Gonzalez*, 927 F. Supp. at 778.  That is plainly the case here, where the names and allegations against the DEA employees are public.

The government's interest in the sensitive investigation is especially diminished here, where the investigation is concluded.  Notably, when courts cite the government's interest in an investigation in this context, they refer to ongoing investigations and the risk that unsealing could jeopardize a current investigation.  *See, e.g.*, *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 253 (4th Cir. 2011) ("The United States has a compelling interest in protecting the integrity of *ongoing* fraud investigations." (emphasis added)).  But even when an investigation is ongoing — and where the government's interest is surely stronger — courts typically reject the government's claimed interest.  Here again, *Gonzalez* is instructive.  In that case, the Court rejected the government's investigatory interest because the "investigation [was] clearly not in its nascent stage, where the risk of disclosing information might affect its viability."  927 F. Supp. at 779. There, as here, the "government makes the bald assertion of a chilling effect on truthful disclosure, not only is there no empirical evidence supporting this proposition, but in all probability, most, if not all, interviews have already been completed."  *Id.*  The Court "conclude[d] that this argument is seriously lacking," *id.*, as the Court here should as well.

Second, the government's reliance on the protective order to justify sealing here is not a compelling interest that overcomes the public's First Amendment right to access.  A protective order is a private agreement entered into between the litigating parties; by definition, the agreement

does not even contemplate the public interest in the documents covered by the order.  For that reason, courts regularly vacate protective orders that "allow[] the parties to control public access to court papers."  *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996); *see also Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1180 (6th Cir. 1983) (confidentiality agreement between the parties could not justify sealing of records to which public has a right of access because a court cannot blindly accept parties' agreements for secrecy "without seriously undermining the tradition of an open judicial system"); *United States ex rel. Thomas v. Duke Univ.*, No. 17-CV-276 (CCE), 2018 WL 4211375, at *13 (M.D.N.C. Sept. 4, 2018) ("Litigants do not hold veto power over public access to the courts, even when they agree to secrecy.").  For that reason, the Second Circuit found that a district court erred in sealing a document where the district court relied solely on the "designation of documents as confidential under a protective order" to seal those documents.  *Newsday LLC*, 730 F.3d at 166.  That is because once a document that has been produced under a protective order is submitted to a court as part of a motion, it "stands on a wholly different footing" than documents produced in discovery.  *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004) (documents subject to pretrial discovery protective order lost their protected status as "raw fruits of discovery" upon submission to court as part of a motion).

The government claims that the sealed records are "subject to the Privacy Act," but that does not amount to a compelling interest.  To determine whether a statute provides a compelling government interest to be weighed against the public's constitutional rights, courts look to the statute itself for clear Congressional intent.  *Cf. United States v. Cohen*, 366 F. Supp. 3d 612, 619 (S.D.N.Y. 2019) (analyzing whether the "statutory provisions . . . evince a clear congressional intent against disclosure that would undermine a common law presumption of access").  But the

Privacy Act contains no such clear congressional intent.  In fact, the Privacy Act contains numerous provisions under which records can be made public, *see* 5 U.S.C. § 552a(b)(1)-(12), including "pursuant to the order of a court of competent jurisdiction," *id.* at 552a(b)(11).

In sum, the government does not have a compelling interest in maintaining sealed records pertaining to an investigation into government misconduct that is now closed.  The Court should grant the Petition on First Amendment grounds.

**B.  The Common Law supports unsealing the records.**

The common law also provides a separate and independent right of access "to inspect and copy public records and documents, including judicial records and documents . . . ." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted).  The common law right "antedates the Constitution" and has "been recognized by [the D.C. Circuit] since at least 1894." *Leopold II*, 964 F.3d at 1127 (citing *Ex Parte Drawbaugh*, 2 App. D.C. 404 (1894)).

Determining "whether a document must be disclosed pursuant to the common law right of access involves a two-step inquiry." *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996).  "First, the court must decide whether the document sought is a public record." *Id.* (internal quotation mark omitted).  Second, "the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure." *Id.* (internal quotation marks omitted).

Under federal common law, a "public record" is "a government document created or kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *Id.* at 905.  This definition is intended to "protect the public's interest in keeping a watchful eye on the workings of public agencies . . . ." *Id.* (internal quotations and citation omitted).  Judicial records are a subset of the public records to

which the common law right applies. *Id.* at 903. A document is part of the judicial record if it is filed with the court and plays a role in the adjudicatory process. *El–Sayegh*, 131 F.3d at 163; *see also Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 2021 WL 68307, at *1, *2 (D.C. Cir. 2021) ("If the goal in filing a document is to influence a judge's decisionmaking, the document is a judicial record.").

To determine whether the common law right of access applies to the documents in question here, the court must determine whether these documents are judicial records with an eye to the concerns underlying the common law right of access to all public records. The "public's interest in keeping a watchful eye on the workings of public agencies" that animates the public record inquiry should similarly ground the "judicial record" inquiry. *El-Sayegh*, 131 F.3d at 161 (internal quotations and citation omitted).

On the first prong, the documents in question constitute judicial records. They were filed with the court and played a role in the court's adjudication of a motion to exclude evidence. *Id.* at 163; *see also Leopold II*, 964 F.3d at 1128 (finding that "supporting documents are likewise intended to influence the court" and are thus judicial records); *Wash. Legal Found.*, 89 F.3d at 906 ("Documents and exhibits filed with or introduced into evidence in a federal court are public records."); *In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 291 (4th Cir. 2013) (documents "filed with the objective of obtaining judicial action or relief" are judicial records); *In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002) (common law right of access attaches to "those materials which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication."). Other courts have held explicitly that motions *in limine* are judicial records, *Silver*, 2016 WL 1572993 at *4, as are

documents that are filed as exhibits in support of motions, *see, e.g.*, *United States ex rel. Thomas v. Duke Univ.*, No. 17-CV-276 (CCE), 2018 WL 4211375, at *4 (M.D.N.C. Sept. 4, 2018).

In the government's response to Mr. Zanders' motion to unseal, the government argued that "documents attached to motion . . . d[o] not have as strong of a public disclosure interest as [court orders]." Gov't Resp. 6. The D.C. Circuit has squarely rejected this argument, holding that "every part of every brief filed to influence a judicial decision" — including exhibits to a brief — "qualifies as a "judicial record." *League of Women Voters of United States v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020). Indeed, courts routinely hold that exhibits to motions are judicial records when they are filed on a court docket and when a court reviews them in making a decision. *See, e.g.*, *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 12 (D.D.C. 2013) ("[T]he documents in this subcategory qualify as judicial records subject to the common law right of access because they were filed with the Court and were the subjects of judicial action."); *MacroMavens, LLC v. Deutsche Bank Sec., Inc.*, No. 09-CV-7819 (PKC), 2011 WL 1796138, at *3 (S.D.N.Y. Apr. 27, 2011) (finding that "information material to the Court's adjudication of the motions *in limine*" were judicial documents and concluding that the "privacy interests do not overcome the interest of the public in access to the judicial documents"). This is no less true even if the court does not "cite or quote" the documents at issue: "[W]e have 'no doubt' that both the district court and this court 'read the briefs, including the parts [they] did not cite or quote.'" *League of Women Voters*, 963 F.3d at 136 (quoting *MetLife, Inc.*, 865 F.3d at 667).

Nevertheless, the government cited to *EEOC v. National Children's Center*, 98 F.3d 1406 (D.C. Cir. 1996) for the proposition that "'documents filed with the court . . . often have a private character, diluting their role as public business.'" Gov't Resp. 6 (quoting *id.* at 1409). That may "often" be true, but it is emphatically not the case here, where the documents in question are

14

quintessentially public records, dealing with misconduct by public officials related to the performance of their public duties in a manner that implicates the public interest.

The government also relied heavily on *United States v. Bulger*, 283 F.R.D. 46 (D. Mass. 2012), *see* Gov't Resp. 6 n.5, 7 nn.6–7 but that case actually supports Petitioner's argument. In *Bulger*, the Boston Globe petitioned for "access to and dissemination of *discovery material in the hands of defendant.*" 283 F.R.D. at 60 (emphasis added). The Court recognized that the "constitutional presumptive right of access includes the criminal trial, most pretrial proceedings and documents and kindred materials submitted in connection with the prosecution and defense of criminal proceedings." *Id.* at 59 (internal quotation marks omitted). Thus, the Court rejected the Boston Globe's petition to make public documents produced during discovery that had not been filed with, or relied upon, by the court. As the *Bulger* court itself recognized, that is a far cry from a case, such as this one, where the documents in question were "actually submitted to a court in the course of litigation." *Id.* at 60.

Turning to the second prong, the public's interest in disclosure of these documents clearly outweighs the government's interest in keeping the documents secret. *Wash. Legal Found.*, 89 F.3d at 902. In this circuit, courts apply the *Hubbard* factors to balance the government's interest in keeping the documents secret with the public interest in access to judicial records. As the D.C. Circuit has explained, there is a strong "public interest in keeping a watchful eye on the workings of public agencies" that weighs strongly in favor of public access to these documents. *Wash. Legal Found.*, 89 F.3d at 905 (internal citations omitted). For that reason, and because the *Hubbard* factors support unsealing (as described below), the Court should grant this Petition.

### C.  Applying the *Hubbard* factors supports unsealing.

The starting point for the application of the *Hubbard* factors is the "strong presumption in favor of public access to judicial proceedings."  *Nat'l Children's Ctr.*, 98 F.3d at 1409; *see also Cable News Network Inc.*, 2021 WL 68307, at *2 (noting that "a strong presumption in favor of disclos[ure]" applies to judicial records).  This presumption in favor of public access, not the existence of a discovery protective order, is the appropriate "starting point" for the Court's consideration of this motion to unseal these records.  *Id.*  To determine whether this strong presumption of public access gives way, the D.C. Circuit established a six-factor test in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).  That test — the "*Hubbard* test" — requires courts to weigh the following:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22).

#### 1.  The Need for Public Access.

As the D.C. Circuit recognized in *Hubbard*, not all judicial records and proceedings are created equal.  650 F.2d at 317.  In some circumstances, such as "the courtroom conduct of a criminal trial," the First Amendment requires public access.  *Id.*  In others, the common law may place a premium on public access.  *Id.*  And, in still others, the public interest in access may be minimal.  *Id.*  Although no precise formula controls in all cases, the public's interest is heightened when disclosure would "'allow the public to understand the rulings as well as the contours of the disputes between the parties.'"  *Hamen v. Islamic Republic of Iran*, 318 F. Supp. 3d 194, 198 (D.D.C. 2018) (quoting *Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017).

High profile cases from around the country have lent even greater urgency to this public interest. In Massachusetts, for instance, the Supreme Judicial Court vacated convictions where a chemist "stole drugs submitted to the lab for testing for her own use, consumed drug 'standards' that are required for testing, and manipulated evidence and the lab's computer system to conceal her actions." *Comm. for Pub. Counsel Servs. v. Att'y Gen.*, 480 Mass. 700, 701 (2018). "In order to protect the integrity of the criminal justice system, and to afford relief to defendants whose convictions may have rested upon tampered evidence, we conclude that . . . all convictions based on evidence that was tested at the Amherst lab on or after January 1, 2009, regardless of the chemist who signed the drug certificate . . . must be vacated and dismissed." *Id.* at 729.

These concerns have hit home in Washington, D.C. In fact, the D.C. Circuit vacated a conviction after finding "a reasonable likelihood that the forensic expert's admittedly false testimony could . . . have affected the judgment of the jury." *United States v. Ausby*, 916 F.3d 1089, 1090 (D.C. Cir. 2019) (cleaned up). Given the nationwide and local attention paid to issues of forensic science and the central role that science plays in the public trust in the criminal justice system, there is a high degree of public interest in the sealed documents in this case.

There is a significant public interest in assessing whether evidence from the Dulles Lab has been compromised by misconduct. In *United States v. Greene*, this Court noted that evidence of the Dulles Lab misconduct could be used to "demonstrate that the rogue chemists were able to circumvent the lab's procedures to evade detection, or that the misconduct was more widespread than is currently understood," and the evidence of misconduct may be used "to cast doubt on the lab's integrity and, by association, the integrity of the government's drug analysis." *See* Mem. and Order at 6, Dkt. No. 35, No. 18-CR-16 (D.D.C. Dec. 21, 2018). The public's interest in "monitoring prosecutorial or judicial misconduct" is an important component of the right to public

access and is clearly implicated here.  *El-Sayegh*, 131 F.3d at 160 (citing *Robinson*, 935 F.2d at 288).  Disclosing the misconduct documents will increase the public's belief in the fairness and trustworthiness of our prosecutorial and judicial systems, core values promoted by the right to public access.  *United States v. Murray*, No. 16-CR-176 (RDM), 2018 WL 3025044, at *1 (D.D.C. June 15, 2018); *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014).

            2.  *Extent of Previous Public Access.*

        The extent of the public's previous access to the documents at issue is the second factor to be weighed in determining whether to unseal documents.  *Hubbard*, 650 F.2d at 318.  "[P]revious access has been considered relevant to a determination [of] whether more liberal access should be granted to materials formerly properly accessible on a limited basis through legitimate public channels and to a determination [of] whether further dissemination of already accessible materials can be restrained."  *Id.* (internal citation omitted).  Most of the factual information concerning issues at the Dulles Lab has already been disclosed publicly in connection with Mr. Zanders' briefing on the motion to compel discovery relating to the Dulles Lab.  *See* Dkt. No. 25.

        Though the specific documents in question have not been made publicly available, the criminal records of Ken Fuentecilla and Sarah Pillard are publicly available online through the Virginia Courts Case Information System for Loudoun County.  Furthermore, redacted versions of the state police reports and interviews may be disclosable under Virginia Freedom of Information Act § 2.2-3706.

            3.  *Objections to Disclosure.*

        The Court must take into account "the fact that someone has objected to disclosure, and the identity of that person."  *Nat'l Children's Ctr.*, 98 F.3d at 1409.  The subjects of the documents under seal, though, have not raised any objections to unsealing and thus, the Court should not

consider these hypothetical objections. *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 8 (D.D.C. 2013) (dismissing defendants' objections "made on behalf of [others] . . . to protect their privacy interests" because "defendants have no standing to raise them"). *See also Leopold I*, 300 F. Supp. 3d at 97 (the lack of objections from parties other than the Department of Justice weighed in favor of disclosure).

The Government has objected to public disclosure of the misconduct documents, but the fact that the Government is a party "strengthens the already strong case for access." *Nat'l Children's Ctr.*, 98 F.3d at 1409 ("The appropriateness of making court files accessible is accentuated in cases where the government is a party." (internal citations omitted)). In analyzing this factor in *Cable News Network*, the D.C. Circuit emphasized that "intelligence sources . . . lives may depend on those redactions," 2021 WL 68307, at *4 — intelligence and secrecy concerns that are not present here. Further, in this case, the Government has not identified the specific prejudice that would result from public disclosure nor what property or privacy interest would justify sealing. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 94 (D.D.C. 2014) ("[T]he party seeking to avoid disclosure must identify specific privacy interests in the documents at issue.").

### 4. Strength of Privacy Interests.

The fourth *Hubbard* factor requires that the court "assess the strength of any property or privacy interests voiced by the moving party." *United States v. Harris*, 204 F. Supp. 3d 10, 17 (D.D.C. 2016) (quoting *United States ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 68 (D.D.C. 2011)). "[U]nder this factor, the party seeking to avoid disclosure must identify specific privacy interests in the documents at issue." *Guttenberg*, 26 F. Supp. 3d at 94. "Whether secrecy plays an outsized role in the specific context" is further relevant to a determination of whether disclosure is appropriate. *Cable News Network Inc.*, 2021 WL 68307,

at *4.  But secrecy does not play an "outsized role" in the disclosure of documents related to a closed misconduct investigation that was concluded more than five years ago.  Moreover, the fact that no party aside from the Department of Justice has objected or raised personal privacy concerns in this case weighs in favor of public access.  *See Leopold I*, 300 F. Supp. 3d at 98.

The chemists whose misconduct is the core of the sealed evidence here stole "methamphetamine and oxycodone" from the laboratory's "working reference materials for their personal use."  Dkt. No. 26, at 6.  Though this conduct may be personally embarrassing, it has significant public ramifications.  *See Silver*, 2016 WL 1572993, at *7.  "'[T]he mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access.'"  *Id.*  (quoting *United States v. Martoma*, No. 12-CR-973 (PGG), 2014 WL 164181, at *5 (S.D.N.Y. Jan. 9, 2014) (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998))).  With respect to public officials in particular, "[p]rivacy interests should be trumped when evoked to protect public officials from criticism."  *United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) ("Even the law of privacy . . . recognizes severe limitations where public figures or newsworthy facts are concerned." (quoting *Garrison v. Louisiana*, 379 U.S. 64, 73 n.9 (1964)).

The privacy interest of the chemists who abused their positions as public employees by engaging in criminal conduct does not override the public's right of access.  *Cf. Martoma*, 2014 WL 164181, at *6 ("[M]ost of the cases in which courts have concluded that the privacy interests of individuals were sufficient to overcome the presumption of access involve illness or sensitive personal financial information." (internal citation omitted)).

##### 5.   *Possibility of Prejudice.*

"The fifth *Hubbard* factor considers whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal." *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 60 (D.D.C. 2009) (citation omitted).  As discussed *supra*, the prejudice that the government claimed in their arguments to the District Court do not amount to significant prejudice sufficient to outweigh the public interest.  Importantly, making these records public would not threaten to "compromise an ongoing criminal investigation" as the records relate to conduct that occurred several years earlier that has already resulted in public criminal prosecution and conviction. *Leopold I*, 300 F. Supp. 3d at 96.  Nor are there are any "dire consequences that may occur" regarding "intelligence sources and methods" — the concerns addressed under this factor by *Cable News Network*, 2021 WL 68307, at *4 — if the Court ordered unsealing.

##### 6.   *Purpose of Information.*

The final factor requires the Court to consider "the purpose for which the documents [or information] in question were introduced." *Harris*, 204 F. Supp. 3d at 17 (citation omitted).  "The more relevant a pleading is to the central claims of the litigation, the stronger the presumption of unsealing the pleading becomes." *Id*. at 17–18; *see also Cable News Network*, 2021 WL 68307, at *5 ("When a sealed document is considered as part of judicial decision making, the sixth factor will oftentimes carry great weight.").  This factor "focuses on the [movant's] purpose of filing his pleadings and nothing further." *Durham*, 818 F. Supp. 2d at 69 (emphasis omitted).  In this case, the documents filed as exhibits to Defendant Zanders' motion *in limine* were central to the claims made in the motion itself: that law enforcement misconduct had tainted the evidence such that this evidence should be excluded.  Likewise, the documents under seal were also central to Mr. Zanders' opposition to the government's motion *in limine*, in which he argued that the "probative

value of the lab misconduct" outweighed the possible prejudice of permitting cross-examination on the misconduct evidence. *See* Dkt. No. 93, at 10. Without having access to the source documents, the strength of this claim is impossible to assess.

Considering the *Hubbard* factors together, weighing especially the fact that the "single most important" factor — the need for public access to the documents — is central to this case, the application of the factors as a whole should weigh in favor of unsealing the documents. *See Leopold I*, 300 F. Supp. 3d at 97.

## IV. CONCLUSION

For the foregoing reasons, this Court should order that the exhibits docketed as ECF No. 83-3; 83-4; 83-5; 83-6; 83-7; 83-8; 83-10; 83-11 and 83-19 be unsealed.

Dated: January 30, 2021
    Washington, D.C.

           Respectfully submitted,

           /s/ Steven Marcus
           Steven Marcus
           D.C. Bar # 1630882

           PUBLIC DEFENDER SERVICE FOR D.C.
           633 Indiana Ave. N.W.
           Washington, DC 20004
           (202) 824-2524
           smarcus@pdsdc.org