**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| IN THE MATTER OF THE APPLICATION | : | | |
| OF THE PUBLIC DEFENDER SERVICE | : | Misc. Action No.: | 1:21-08 (RC) |
| FOR THE DISTRICT OF COLUMBIA TO | : | | |
| UNSEAL CERTAIN RECORDS | : | Re Document No.: | 1 |
| | : | | |

<u>**MEMORANDUM OPINION**</u>

**Granting Petitioner's Motion to Unseal**

## I.      INTRODUCTION

The Public Defender Services for the District of Columbia ("PDS") is petitioning the

Court to unseal a set of exhibits to a motion *in limine* from a now-resolved criminal case, *United*

*States v. Zanders*.  The Government does not oppose unsealing seven of the nine exhibits,

leaving only two at issue.  Although PDS has not established a First Amendment right of access

to the exhibits, the Court finds that they are judicial records subject to a common law right of

access and that the balance of public and private interests favors unsealing.

## II.      FACTUAL BACKGROUND

Gregory Zanders was charged in 2016 with, among others, unlawful possession of

cocaine with intent to distribute.  *See* Indictment, *United States v. Zanders*, Case No. 1:16-cr-

197, ECF No. 1.  The cocaine in Zanders's possession at the time of his arrest was tested at the

Drug Enforcement Agency laboratory in Dulles, Virginia in 2017.  *See* Resp. Pet. Unseal

("Resp.") at 3, ECF No. 7.  In pretrial proceedings before this Court, Zanders filed a motion *in*

*limine* seeking to exclude evidence of that drug analysis and attached various exhibits involving

misconduct by two chemists who were arrested for stealing drugs from the Dulles DEA

laboratory.  *See* Defs.' Mot. *in Limine* to Exclude Evidence, *Zanders*, ECF No. 83.  The Court

ultimately denied that motion, concluding that "Mr. Zanders has simply not established a

connection between that misconduct and the test results that is significant enough to call into question the reliability of the Government's evidence."  Mem. Op. Granting Gov't's Mot. *in Limine* & Denying Def.'s Mot. *in Limine* at 10, *Zanders*, ECF No. 103 ("Mem. Op.").

The exhibits involving the misconduct at the DEA laboratory attached to Zanders's motion were produced in discovery under a consent protective order covering "Designated Drug Enforcement Administration materials"—the internal investigative and personnel information relating to the misconduct of those chemists.  Consent Protective Order, *Zanders*, ECF No. 43. That order required any papers filed with the Court referencing the designated DEA materials to be filed under seal.  *Id.* ¶ 8.  It also excluded any materials that would later become part of the public record of the case by virtue of admission into evidence at trial.  *Id.* ¶ 9.

In accordance with the protective order, Zanders filed both the motion *in limine* and attached exhibits under seal but also sought a ruling from the Court that they need not remain under seal.  *See* Mem. Op. at 14.  PDS supported that motion as *amicus curiae*, arguing that the public interest weighs strongly in favor of unsealing.  Amicus Curiae Br. at 5–6, *Zanders*, ECF No. 94-1.  The Government responded that it did not oppose the unsealing of the motion itself (with a single redaction) and did not oppose unsealing of several of the exhibits, but it argued that Zanders had failed to show good cause to modify the protective order for the remaining exhibits.  Gov't Resp. to Mot. Leave File Under Seal Temporarily at 3, 6, *Zanders*, ECF No. 98. The Court agreed with the Government and declined to unseal the exhibits subject to that order. Mem. Op. at 16.  Although it recognized that there was a public interest in the exhibits, the Court stated that it believed FOIA was the proper mechanism for weighing the competing privacy and public interests.  *Id.* at 16 n. 8.

PDS now moves to unseal the remaining exhibits, arguing that the Court improperly applied the more stringent standard of review for modifying a protective order rather than the more permissive *Hubbard* standard for the sealing of judicial records.[1]  Petition to Unseal Records ("Petition") at 2, ECF No. 1.  The motion is fully briefed and ripe for resolution.  *See* Resp.; Reply Supp. Petition Unseal Records ("Reply"), ECF No. 8.

### III.    ANALYSIS

PDS moves to unseal nine exhibits attached to Zanders's motion *in limine*: ECF numbers 83-3, 83-4, 83-5, 83-6, 83-7, 83-8, 83-10, 83-11, and 83-19 of *United States v. Zanders*.  Petition at 1.  The Government does not oppose unsealing most of those records: ECF Nos. 83-3, 83-6, 83-7, 83-8, 83-10, 83-11, and 83-19.  Resp. at 16–17.  Given the lack of opposition, the Court will order ECF Nos. 83-3, 83-6, 83-7, 83-8, 83-10, 83-11, and 83-19 unsealed.

That leaves only two of the exhibits, ECF Numbers 83-4 and 83-5 (the "Records") in dispute.  PDS advances two theories in support of unsealing: 1) the common law right of access, and 2) the First Amendment right of access.  Petition at 2.  The Government argues the Records

---

[1] The Court agrees that the First Amendment and common law rights of access apply to the unsealing motion, despite the existence of the consent protective order.  *See United States v. Torrens*, 560 F. Supp. 3d 283, 287 (D.D.C. 2021) (evaluating a petition for the unsealing of video exhibits covered by a protective order submitted in connection with a plea hearing under *Hubbard* frameworks); *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 78 (D.D.C. 2020) ("[T]o determine whether a seal over judicial records should be maintained, a court must 'fully account for the various public and private interests at stake' . . . . In the D.C. Circuit, that duty is dispatched by considering the following six factors derived from its decision in *Hubbard* . . . ."); *Breiterman v. U.S. Capitol Police*, No. 16-cv-893, 2019 WL 11318341, at *1 (D.D.C. Sept. 20, 2019) (evaluating whether exhibits to a civil summary judgment motion filed under seal pursuant to a protective order should remain sealed under the *Hubbard* framework); *Dome Pat., L.P. v. Doll*, No. 07-cv-1695, 2009 WL 1111004, at *1 (D.D.C. Apr. 24, 2009) (declining to approve a stipulated protective order after considering the *Hubbard* factors); *Youngbey v. District of Columbia*, No. 1:09-cv-00596, 2010 WL 11673773, at *1 (D.D.C. Mar. 19, 2010) ("In deciding whether to allow civil litigants to file records under seal, the Court must consider 'the rights of the public, an absent third party' to whom the Court ultimately is accountable." (citation omitted)).

should not be unsealed because PDS's Petition is foreclosed by res judicata and neither the

common law nor the First Amendment provide a right of access.  Resp. at 17, 21.  As further

explained below, the Court finds the Petition is not barred by res judicata, and that while the First

Amendment framework does not support unsealing, the common law framework does.

### A.  Res Judicata

The Government first argues the Petition is foreclosed by res judicata because "PDS

participated as amicus in support of" Zanders's previous unsuccessful attempt to unseal the

Records (among other documents).  Resp. at 18–19.  Under the doctrine of res judicata, "a

judgment on the merits in a prior suit bars a second suit involving identical parties or their

privies based on the same cause of action."  *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir.

2004) (citing *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)); *see also Montana v. United

States*, 440 U.S. 147, 153 (1979).  PDS argues that the Government fails to satisfy this test

because "PDS was not a 'party' or a 'privy' to Mr. Zanders' unsealing motion."  Reply at 1, 4.

The Court agrees with PDS that res judicata does not bar the Petition.

A nonparty's claim is precluded when the nonparty "exercise[d] control" over the prior

litigation.  *Montana*, 440 U.S. at 154–155.  In *Montana*, the Supreme Court found the United

States exercised control over litigation between a public contractor and the State of Montana, and

as a result was barred from bringing its own claim against the State because the United States

had "required" the contractor to file the lawsuit, "reviewed and approved the complaint," "paid

the attorneys' fees and costs," and directed appeals, *in addition* to filing as *amicus*.  *Id.* at 155.

While the Supreme Court did not say what would suffice as the minimum requirements for a

nonparty exercising control over litigation, courts are in agreement that mere "appearance as

*amici* does not rise to the level of participation necessary for preclusion."  *See Adams v. Bell*, 711

F.2d 161, 197 n.128 (D.C. Cir. 1983) (collecting cases); *see also United States v. Rashed*, 234 F.3d 1280, 1282–83 (D.C. Cir. 2000) (suggesting "control is enough if 'the nonparty has the actual measure of control or opportunity to control that might reasonably be expected between two formal coparties'" (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Practice and Procedure* § 430 (1981))); *Stryker v. Crane*, 123 U.S. 527, 540 (1887) ("It is not an uncommon thing in this court to allow briefs to be presented by or on behalf of persons who are not parties to the suit, but who are interested in the questions to be decided, and it has never been supposed that the judgment in such a case would estop the intervenor in a suit of his own which presented the same questions.").

In light of the foregoing authorities, PDS filing an *amicus* brief is not alone sufficient to meet the threshold requirement of "exercis[ing] control" over the *Zanders* litigation. *Montana*, 440 U.S. at 155. The Government does not explain how PDS had any influence over the *Zanders* litigation aside from filing as *amicus*, and PDS contends unequivocally that it did not represent Zanders, participate in other parts of the proceeding, or even have advance notice of Zanders's motion to unseal the records. Reply at 4, 6. In short, it "had no opportunity at all to control the course of the proceedings in *Zanders*." *Id.* at 6. Absent so much as a suggestion of an exercise of control by PDS in the *Zanders* case, the Petition is not barred by res judicata.[2]

---

[2] The government does not argue that PDS was a "privy" to the *Zanders* litigation, nor was PDS "so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *See Sodexo Operations, LLC v. Not-for-Profit Hosp. Corp.*, 210 F. Supp. 3d 138, 148 (D.D.C. 2016) (quoting *Herrion v. Children's Hosp. Nat'l Med. Ctr.*, 786 F. Supp. 2d 359, 371 (D.D.C. 2011)). Zanders's legal interests in the earlier action related to the use of the exhibits in service of his motion *in limine* and arguments in his criminal trial, interests that are conceptually and legally distinct from the public access and constitutional interests raised by PDS.

## B.      First Amendment Right of Access

The First Amendment right of access[3] to judicial proceedings ensures that the judicial

system remains accountable to the people, for while "[p]eople in an open society do not demand

infallibility from their institutions . . . it is difficult for them to accept what they are prohibited

from observing."  *Press-Enter. Co. v. Superior Court of California, Riverside County*, 464 U.S.

501, 509 (1984) ("*Press-Enter. I*").  These interests are paramount to maintaining the integrity of

our criminal legal system because, "[t]o work effectively, it is important that society's criminal

process satisfy the appearance of justice."  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,

571–72 (1980) (internal quotation omitted).

As such, courts have recognized a qualified constitutional right of access to a number

court documents and proceedings.  *See United States v. Brice*, 649 F.3d 793, 795–96 (D.C. Cir.

2011) (listing the rights of access to criminal trials, *voir dire* proceedings, preliminary hearings,

and completed plea agreements).  At the same time, the interests served by the right of access to

court materials are not without their limits.  "Although many governmental processes operate

best under public scrutiny, it takes little imagination to recognize that there are some kinds of

government operations that would be totally frustrated if conducted openly."  *Press-Enter. Co. v.

Superior Court of California for the County of Riverside*, 478 U.S. 1, 8–9 (1986) ("*Press-Enter.*

---

[3] The Court addresses PDS's constitutional claim before its common-law claim "because of the different and heightened protections of access that the first amendment provides over common law rights."  *See Washington Post v. Robinson*, 935 F.2d 282, 288 n.7 (D.C. Cir. 1991) (reaching the First Amendment issue first when determining the right of access to plea agreements); *see also In re Reps. Comm. for Freedom of the Press*, 773 F.2d 1325, 1340 (D.C. Cir. 1985) ("holding that the District Court's action did not violate the First Amendment" while observing without deciding that "[c]onceivably, it violated the federal common law"); *but see Torrens*, 560 F. Supp. 3d at 289 (addressing only the common law right of access because "only that basis for public release need be addressed to grant petitioners their requested relief").

*II*") (discussing grand jury proceedings).  Thus, whether a qualified right of access exists depends on "considerations of experience and logic."  *Id.* at 9.

To establish a qualified right of access to court documents and proceedings under the experience and logic test, the movant must show that (1) "there is an 'unbroken, uncontradicted history of openness', and (2) public access plays a significant positive role in the functioning of the proceedings."  *Brice*, 649 F.3d at 795 (quoting *Richmond Newspapers*, 448 U.S. at 573; *see also United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997).  These logic and experience questions must "both . . . be answered affirmatively before a constitutional requirement of access can be imposed."  *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985).

Even once established, the right of access is presumptive but "not absolute."  *Brice*, 649 F.3d at 795 (citing *Press-Enter. II*, 478 U.S. at 9); *see also Dhiab v. Trump*, 852 F.3d 1087, 1095 (D.C. Cir. 2017).  "[T]he presumption [of access] can be overridden only if (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest."  *Brice*, 649 F.3d at 795 (citing *Washington Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991)); *see also Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 606–07 (1982).

### 1.    Logic

The Court begins with the logic prong of the right of First Amendment right of access test, which requires "public access play[] a significant positive role in the functioning of the proceedings."  *Brice*, 649 F.3d at 795.  PDS argues that public access to the exhibits is necessary to assure "public confidence in the fairness of the system as a whole" because the Records were

relied on by the Court in ruling on the *Zanders* motion *in limine*.  Petition at 8.  The Government

argues that public access does not "serve[] an important function of monitoring prosecutorial or

judicial misconduct" because the Records only concern misconduct in cases other than *Zanders*.

Resp. at 26 (quoting *El-Sayegh*, 131 F.3d at 161).  It further argues "all of the information [the

public] needs to evaluate" the *Zanders* motion *in limine* ruling was identified by Zanders in his

motion and there was no need to attach the exhibits at all.  Resp. at 27–28.  On this prong, PDS

has the better of the argument.

Public access to the Records attached in support of Zanders's motion *in limine* would

play a beneficial role by strengthening public confidence in the outcome reached by the Court.

"Public access plays a significant positive role in the functioning of evidentiary decision making

because it enhances both the basic fairness of the criminal trial and the appearance of fairness so

essential to public confidence in the system."  *United States v. Silver*, No. 15-cr-93, 2016 WL

1572993, at *4 (S.D.N.Y. April 14, 2016) (cleaned up) (citing *Lugosch v. Pyramic Co. of*

*Onondaga*, 435 F.3d 110, 120 (2nd Cir. 2006)); *see also Press-Enter. II*, 478 U.S. at 8–9.  The

Court found that the exhibits were insufficiently connected to the reliability of the Zanders's

drug tests to warrant exclusion of the tests.  Mem. Op. at 10–11.  Public access to the Records

would promote confidence in that evidentiary conclusion.

The Government argues that because "Zanders identified the specific information from

the documents that he wanted this Court to consider in weighing whether to exclude drug

evidence" that the public already has access to "all of the information that it needs to evaluate

this Court's ruling."  Resp. at 27.  The Court is not convinced, however, that a party's recounting

in its brief of what the evidence shows is an adequate substitute for the public's first-hand access

to the underlying information.  Statements made by counsel in briefs are not evidence and are by

nature designed to present the facts in the most favorable light for that party.  *See Sardo v. McGrath*, 196 F.2d 20, 23 (D.C. Cir. 1952) ("[M]emoranda of points and authorities . . . are expressly not made part of the record."); *see also Brown v. Maxwell*, 929 F.3d 41, 52 (2d Cir. 2019) ("[P]leadings, complaints, and briefs—while supposedly based on underlying evidentiary material—can be misleading.  Such documents sometimes draw dubious inferences from already questionable material or present ambiguous material as definitive.").  The ability to view the exhibits therefore serves the important function of allowing the public to independently evaluate the parties' arguments and the Court's conclusion, thereby "enhanc[ing] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."  *Press-Enter. I*, 464 U.S. at 508.

The Court thus finds that public access to the exhibits would benefit the proceedings by promoting confidence in the Court's evidentiary ruling.  However, this only satisfies the logic prong of the test.  As discussed below, PDS has not satisfied the experience prong necessary to establish a qualified right of access.

### 2.      Experience

The experience factor requires that the history of access to exhibits attached to a motion *in limine*, such as the Records here, be "unbroken" and "uncontradicted."  *See Brice*, 649 F.3d at 795.  The D.C. Circuit has explained that this inquiry is "functional rather than classificational" and asks "whether information *of the sort at issue here*—regardless of its prior or current classification as court records—was traditionally open to public scrutiny."  *In re Reporters Comm.*, 773 F.2d at 1337 (emphasis in original).

The persuasive authorities cited by PDS in support of its contention that there is a history of access to motions *in limine* do not squarely address the right of access to sealed documents

filed in support of those motions.  *See* Petition at 7–8.  For instance, in *United States v. Silver*, the court did state that "[m]otion *in limine* practice has historically been open to the press and general public," but the documents at issue in that case were the actual briefs filed in support of and against that motion and the transcript of oral argument, not the exhibits attached to the motions.[4]  No. 15-cr-93, 2016 WL 1572993, at *4–5 (S.D.N.Y. April 14, 2016) (quotation omitted); *see also United States v. Martoma*, No. S1 12-cr-973, 2014 WL 164181, at *6 (S.D.N.Y. Jan. 9, 2014) (acknowledging a First Amendment right of access for "substantive pretrial motions" and denying a request to seal motion *in limine* briefing and the related hearing in a criminal matter).  Likewise, in *Garden City Emps.' Ret. Sys. v. Psychiatric Sols.*, *Inc*. the court pointed out that motions *in limine* "and related documents" could impact the court or jury's decision and would therefore be entitled to presumptive access, but it did not directly address the logic and experience factors or decide the question because the court had not actually ruled on any of those motions.  No. 09-cv-882, 2016 WL 5231805, at *5–6 (M.D. Tenn. Sept. 20, 2016)).  In contrast, at least one case found that no First Amendment right required unsealing a motion and attached declaration "filed in connection with a motion *in limine* to exclude expert testimony" because it was a non-dispositive civil motion.  *Lord Corp. v. S & B Tech. Prods., Inc.*, No. 5:09-cv-205, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012).

PDS relies heavily on analogy to the First Amendment rights relating to suppression motions.[5]  In that context, at minimum there is a consensus that the suppression hearings

---

[4] Though PDS points out that *Silver* ordered unsealing of "letters related to the motions" *in limine*, Reply at 7, those "letters" were in fact letter briefs filed in relation to unsealing after the trial had taken place.  *Silver*, 2016 WL 1572993, at *2.

[5] PDS also relies heavily on the *Gonzalez* case, which found both a First Amendment and common law right of access to investigative materials involving misconduct by an FBI official who had testified against the defendant which were relied on as evidence in the defendant's motion for a new trial.  Petition at 6, 10 (discussing *United States v. Gonzalez*, 927 F. Supp. 768,

themselves and documents filed in conjunction with the hearings have been historically open to the public, although there is some disagreement on whether that right always extends to exhibits filed in connection with those motions. *See United States v. McVeigh*, 119 F.3d 806, 813 (10th Cir. 1997) (holding that "[s]uppression motions have historically been open to inspection by the press and the public" but "the right of access to suppression hearings and accompanying motions does not extend to the evidence actually ruled inadmissible in such a hearing"); *Matter of New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) ("[T]he First Amendment right of access applicable to a suppression hearing extends to the exhibits at the hearing" and "written documents submitted in connection with a suppression motion."); *United States v. Criden*, 675 F.2d 550, 557 (3d Cir. 1982) ("[T]he public has a first amendment right of access to pretrial suppression . . . hearings."); *United States v. White*, 855 F. Supp. 13, 15 (D. Mass. 1994) ("The public has a qualified First Amendment right of access to hearings on motions to suppress and documents on which suppression decisions are based."); *United States v. Campbell*, No. 1:19-cr-25, 2021 WL 1975319, at *2 (S.D. Ohio May 18, 2021) ("Given the public interest in [suppression] proceedings, the First Amendment right of access fairly extends to the exhibits used at such a hearing."); *United States v. Kwok Cheung Chow*, No. 14-cr-00196, 2015 WL 5094744, at *6 (N.D. Cal. Aug. 28, 2015) ("[E]xhibits filed in connection with the motions to suppress also fall within the First Amendment right of access by virtue of their connection to those motions."); *cf. Waller v. Georgia*, 467 U.S. 39, 46 (1984) (holding that a defendant's Sixth

---

771 (D. Del. 1996)). The Court agrees that there are relevant factual similarities between this case and *Gonzalez* but believes they are more relevant to the common law analysis because *Gonzalez* dealt with the different procedural posture of post-trial submissions, conceded that "historical analysis provides minimal guidance to the determination of whether the First Amendment right of access applies" in that context, and relied primarily on the logic prong. *Id.* at 782.

Amendment right to an open trial prevented total closure of a suppression hearing and suggesting that the First Amendment would be implicated as well).[6]

There are important differences between motions *in limine* and suppression motions, however.  Overall, "proceedings on a motion *in limine*, in either a criminal or civil case, are functionally a part of the trial itself in that they resolve critical questions of whether particular pieces of evidence will be admitted at trial."  *Hispanic Nat'l Law Enforcement Ass'n NCR v. Prince George's County*, No. 18-cv-3821, 2021 WL 488641, at *3 (D. Md. Feb. 10, 2021).  But "a suppression hearing often resembles a bench trial: witnesses are sworn and testify, and . . . [t]he outcome frequently depends on a resolution of factual matters."  *Waller v. Georgia*, 467 U.S. at 47.  Suppression hearings also generally seek to vindicate important constitutional rights, and "because the suppression hearing is the point in the process where the conduct of law enforcement officers is at issue, the public interest in access to a suppression hearing is particularly high."  *McVeigh*, 119 F.3d at 813; *see also* Henry B. Rothblatt & David H. Leroy, *Motion in Limine Practice*, 20 Am. Jur. Trials 441 § 7 (Feb. 2022 update) ("[R]elief is sought in a suppression hearing on specific constitutional or statutory grounds, whereas the motion *in limine* is directed only to the trial judge's inherent and discretionary power to prevent prejudicial occurrences from transpiring in the presence of the jury.").

In contrast, motions *in limine* necessarily deal with evidence that has not yet been ruled admissible.  Sealed exhibits to those motions thus fall somewhere in between mere discovery, to

---

[6] Although many of these cases deal with the hearings themselves, this Court agrees that "[a]ccess to written documents filed in connection with pretrial motions is particularly important . . . where no hearing is held and the court's ruling is based solely upon the motion papers," *Matter of New York Times Co.*, 828 F.2d at 114, which was the situation with respect to Zanders's motion *in limine*, *see* Mem. Op. at 11 n.6 (declining to hold an evidentiary hearing on the motion *in limine*).

which the public has no right, and the evidence attached to dispositive briefs or submitted in open court. *See Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) ("Although the documents had been the subject of a pretrial discovery protective order . . . once the documents were made part of a dispositive motion, they lost their status as being 'raw fruits of discovery . . . .'"). "[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *see also In re Reporters Comm. For Freedom of the Press*, 773 F.2d at 1338 ("[This] passage of *Seattle Times* . . . evidently considers the *admission* of evidence the touchstone of a First Amendment right to public access." (emphasis in original)). In short, "[a] First Amendment right of access does not attach to criminal discovery materials not admitted into evidence, since these documents are not a 'traditionally public source of information.'" *United States v. Ring*, 47 F. Supp. 3d 38, 42 (D.D.C. 2014) (quoting *Seattle Times*, 467 U.S. at 33). The evidence of misconduct in the Records was in fact excluded from evidence because "[t]he risk of unfair prejudice, confusion, and wasted time . . . outweigh[ed] [its] the minimal probative value." Mem. Op. at 13.[7]

The law in this Circuit requires a showing of *both* the experience and logic prongs and appears to set the bar for the showing of a historical practice fairly high. *See Reps. Comm. for Freedom of the Press*, 773 F.2d at 1332 ("An historical tradition of at least some duration is obviously necessary, particularly to support a holding based upon the remote implications of a constitutional text . . . ."). For instance, in *Reporters Committee*, the Circuit declined to find a First Amendment right "preventing federal courts . . . from treating the records of private civil

---

[7] Had the Records later been admitted at trial, they would have ceased to be covered by the protective order under its own terms. *See* Consent Protective Order ¶ 9.

actions as private matters until trial or judgment" because it could not "discern an historic

practice of such clarity, generality and duration as to justify the pronouncement of" that rule.

*Reps. Comm. for Freedom of the Press*, 773 F.2d at 1336.  As such, although the issue is

admittedly ambiguous, the Court is ultimately not persuaded that there is "an unbroken,

uncontradicted history" of access to sealed exhibits filed in connection with a motion *in limine*.

*See Brice*, 649 F.3d at 795.  Because PDS does not have a qualified First Amendment right of

access to the Records, the Court does not address whether the Government could rebut that right

by showing a compelling interest, and instead turns to the common law analysis.

### C.    Common Law Right of Access

PDS also asserts the related common law right of access to judicial documents.  Petition

at 12.  "The common-law right of public access to judicial records 'is a fundamental element of

the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial

Branch.'"  *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d

1121, 1127 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d

661, 663 (D.C. Cir. 2017)).  Because the common law right is "broader, but weaker" than the

First Amendment right, *El-Sayegh*, 131 F.3d at 160, it may attach to documents even where the

First Amendment does not.  *See Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 728

(M.D.N.C. 2013) (finding that "briefs and exhibits relied upon or considered by the Court in

deciding [a] motion for class certification are judicial records" to which the common law

presumption of access—but not the First Amendment—applies); *Lord Corp. v. S & B Tech.*

*Prods., Inc.*, 2012 WL 895947, at *1 (finding that a First Amendment right of access did not

apply to documents filed in connection with a motion *in limine* to exclude expert testimony but

evaluating the documents under the common law).

Courts must first establish whether the document in question is a "judicial record" to determine whether this right is implicated.  *See Ring*, 47 F. Supp. 3d 38 at 41.  "[W]hat makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." *El-Sayegh*, 131 F.3d at 163.  "Documents and other materials filed in court 'intended to influence the court' are judicial records." *United States v. Jackson*, No. 21-mj-115, 2021 WL 1026127, at *4 (D.D.C. Mar. 17, 2021) (quoting *In re Leopold*, 964 F.3d at 1128).  Here, the Government "assume[s] for purposes of this litigation" that the exhibits are judicial records, Resp. at 32, and the Court easily concludes that the exhibits were filed with the intent to influence the Court's decision on its motion *in limine* and were in fact relied on by the Court in resolving that motion.  *See Metlife,* 865 F.3d at 667 (holding that a joint appendix, including sealed portions, was a judicial record because it "contains information with which the parties hope to influence the court, and upon which the court must base its decision").

Complicating the issue somewhat is the fact that the Records which were filed under seal were already partially redacted.  The redactions cover the names of third-party witnesses, the report file number, identifying information about other criminal cases referenced in the report, and the names of the Office of Professional Responsibility (OPR) officials who conducted the investigation.  Because judicial records are limited to those that played an adjudicatory role, PDS would at most only be entitled to access the exhibits in the form the Court considered them.  As such, unsealing would not require the government to remove the redactions that appeared in the sealed filing.

If, as here, a document is a judicial record, "then the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure." *Washington Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) (citation

omitted).  Courts in this Circuit do so by weighing of six factors identified in *United States v. Hubbard*: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."  *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996).

1.     Need for Public Access to the Documents

There is a "strong presumption in favor of public access" when a document is a judicial record.  *In re Leopold*, 964 F.3d at 1127 (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)).  Yet "[t]here is a stronger presumption of transparency in some judicial proceedings than in others."  *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 58 (D.D.C. 2009); *accord All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 81 (D.D.C. 2020). "For example, situations involving 'access to the courtroom conduct of a criminal trial or a pre-trial suppression motion,' or 'documents which have been introduced as evidence of guilt or innocence in a trial,' command a relatively strong presumption of openness," as do "'cases where the government is a party.'"  *Friedman*, 672 F. Supp. 2d at 58 (first quoting *Hubbard*, 650 F.2d at 317 and then quoting *EEOC*, 98 F.3d at 1409).  In contrast, "the presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment."  *Brown v. Maxwell*, 929 F.3d at 50.  Overall, this factor weighs somewhat in favor of release.

First, the Records involve governmental misconduct of general public interest.  *See In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 7 (D.D.C. 2013) (acknowledging a public interest in settlement documents relating to a major metrorail accident even though the settlement itself would "not shed much light (if any) on the circumstances of the train collision"). In addition, they are disciplinary documents, meaning "the need may be slightly higher because . . . there is a public interest in ascertaining how the [government] disciplines its employees." *Willingham v. Ashcroft*, 355 F. Supp. 2d 390, 391 (D.D.C. 2005).

Although attached to a motion *in limine* rather than a motion to suppress, the documents also involve a key evidentiary decision in a criminal case.  *See United States v. Murray*, No. 16-cr-176, 2018 WL 3025044, at *2 (D.D.C. June 15, 2018) ("[T]here is a strong public interest in access to documents 'introduced as evidence of guilt or innocence in a trial,' and in documents relied upon by a court in reaching a decision on questions of importance." (quoting *Hubbard*, 650 F.2d at 317)).  Although the Records themselves did not directly bear on Zanders's innocence or guilt, he used them to attempt to undermine the results of the drug test, which was key evidence bearing on his culpability for the charged offenses.

That the misconduct detailed in the contested Records, involving the DEA chemist Fuentecilla at a different lab years before the testing of the drugs in *Zanders*, was determined to be ineffective for that purpose is beside the point.  The need for public access here turns on whether access to the document would help the public understand and evaluate the Court's evidentiary outcome.  *See Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017) ("The public interest in these documents is heightened because they allow the public to understand the rulings as well as the contours of the disputes between the parties."); *see also El-Sayegh*, 131 F.3d at 163 (stating that FOIA is the proper device for documents that would provide "public oversight of the

executive" but were not judicial records because they "played no role in any adjudicatory function"). The public interest therefore covers both material that the court found persuasive and material that it did not.[8] *See Metlife, Inc*, 865 F.3d at 668 ("Without access to the sealed materials, it is impossible to know which parts of those materials persuaded the court *and which failed to do so* (and why)." (emphasis added)). And while documents can play an adjudicatory role even if they are not cited in the final opinion, *see id.*, the fact that this Court did cite to the Records in its opinion leaves no doubt that they played a role in the adjudication of the motion *in limine*, *see* Mem. Op. at 3.

2.      Extent of Previous Public Access

With respect to the second factor, the Records that remain disputed involve the specific misconduct of Fuentecilla that predated both the *Zanders* case and Fuentecilla's employment at the Dulles Lab. Their substance has been publicly described in general terms only, including in this Court's previous opinion. Mem. Op. at 3 ("In 2010 [Fuentecilla] tested positive for methamphetamine and was investigated for general mishandling of evidence that he was supposed to be testing for use in criminal prosecutions."). The specific details of that earlier misconduct and the documents themselves have not been publicly disclosed, however. *See* Resp. at 34. Therefore, this factor tilts slightly in favor of sealing.

3.      Objections to Disclosure & Possibility of Prejudice to Those Objecting

The Court considers the third and fifth *Hubbard* factors together. The third *Hubbard* factor is primarily concerned with any objections to disclosure raised by third parties. *See*

---

[8] As explained above, it also makes no difference that the information was also described in the briefs and opinion. The Court did not find any reason to believe that the Records cast doubt on the *Zanders* drug test, but there is added value in allowing the public to see for itself rather than taking the Court and parties at their word.

*Hubbard*, 650 F.2d at 320 ("[T]he fact that objection to access is made by a third party weighs in favor of non-disclosure."). The third party with the most obvious interest in the Records is Fuentecilla, and he has not objected despite the fact that his name and the general contours of his misconduct are already part of the public record. *Cf. Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 120 (D.C. Cir. 2021) (pointing out that third party intelligence sources would necessarily risk their anonymity and safety by objecting). The Records also contain statements from other federal employees who acted as witnesses in the investigation who did not object. The only objection has been raised by the Government, which concedes that it "does not assert a particular prejudice from disclosure." Resp. at 34.[9] "Where the individuals whose privacy interests are in question have interposed no objections, [a] defendant's institutional challenge is not persuasive." *Cobell v. Norton*, 157 F. Supp. 2d 82, 91 (D.D.C. 2001).

In addition to the lack of objection, the Court also does not perceive any potential prejudice to the witnesses who were interviewed for the reports in the Records or the investigators who conducted them. Those individuals would suffer no harm or even embarrassment given that they are not implicated in wrongdoing. Moreover, the version of the Records that was filed under seal *already* redacts the witnesses' names. Because the Court has already determined that unsealing would not require the Government to remove those redactions,

---

[9] When addressing the First Amendment argument, the Government raised the concern that "[b]ypassing protective orders . . . would significantly hamper the broad discovery cooperation that courts encourage." Resp. at 28. To the extent that this argument could be applicable to the Government's objection, the Court agrees with PDS that the Government is obliged to cooperate in discovery regardless of whether that information could eventually be unsealed. *See Gonzalez*, 927 F. Supp. at 780 ("[I]nasmuch as the Supreme Court has charged the government with certain duties under *Brady*, the Court has no reason to suspect that the United States Attorney's office will not continue to conscientiously adhere to this duty.").

the witnesses' identities would not become public in any event.  Thus, these factors weigh strongly in favor of unsealing.

4.	Strength of Privacy Interests

Under this factor, "the party seeking to avoid disclosure must identify specific privacy interests in the documents at issue."  *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 94 (D.D.C. 2014); *Friedman*, 672 F. Supp. 2d at 60 (noting that "[t]he *Hubbard* court addressed this factor by examining the objecting party's privacy interest in the particular documents . . . rather than the effect that unsealing the documents would have on the party's property and privacy interests generally . . . .").  The Government's primary argument here is that the Records are OPR reports subject to protections under the Privacy Act, Resp. at 29, 34 (citing 5 U.S.C. § 552a(b); 28 C.F.R. § 16.80(a)(1)), and that the default protection of the Privacy Act should not be lightly cast aside.  Specifically, it points to Fuentecilla's privacy interest in his personnel record and the more generalized concern that "investigations into misconduct are sensitive and require assurances of confidentiality to witnesses to ensure employee misconduct can be fully identified and addressed."  *Id.* at 29.

For the reasons already discussed, the Court does not believe that Fuentecilla's privacy interest is strong enough to overcome disclosure.  Again, the broad substance in the Records is already public knowledge and Fuentecilla has not objected to unsealing.  *See Gonzalez*, 927 F. Supp. at 778 (finding that privacy interests did not outweigh the public interest in a personnel investigation where "the allegations against the FBI are already in the public domain").  And while the information in the Records is reputationally embarrassing for Fuentecilla, "[t]he D.C. Circuit has narrowly construed the privacy interests that would justify sealing the record, limiting them to documents that would 'reveal the intimate details of individual lives, sexual or

20

otherwise'—a higher standard than mere embarrassment." *Gilliard v. McWilliams*, No. 16-cv-2007, 2019 WL 3304707, at \*4 (D.D.C. July 23, 2019) (quoting *Hubbard*, 650 F.2d at 324)).

The Government's attempts to distinguish *Gonzalez* and *Stevens* are unpersuasive. *See* Resp. at 30 (discussing *Gonzalez*, 927 F. Supp. 768 and *United States v. Stevens*, 2008 WL 8743218 (D.D.C. Dec. 19, 2008)). Although neither of those cases are binding precedent, they are factually similar in that they both involved the proposed sealing of sensitive investigations into government misconduct. *See Gonzalez*, 927 F. Supp. at 771–72 (involving allegations of misconduct by an FBI chemist who had testified at the underlying criminal trial); *Stevens*, 2008 WL 8743218, at \*2 (involving a whistleblower complaint related to prosecutorial misconduct in a criminal matter). It is true that both those cases involved misconduct directly related to the underlying case, whereas Fuentecilla's misconduct detailed in the Records was barely tangential to the issues in *Zanders*. Still, while that distinction undoubtedly strengthened the need for public access in *Gonzalez* and *Stevens*, it does not follow that it strengthens Fuentecilla's privacy interests here.

The Government also argues that keeping the Records under the Privacy Act's protections serves compelling privacy interests "because assurances of confidentiality to witnesses . . . ensure employee misconduct can be fully identified and addressed." Resp. at 29. *Gonzalez* rejected a similar policy concern about the impact of unsealing on potential witnesses in that investigation—which was still ongoing—stating that "it is difficult to accept the argument that persons selected to be interviewed, and possibly put under oath, would withhold information out of fear that their statements would enter the public domain." *Gonzalez*, 927 F. Supp. at 779. The same reasoning applies with even greater force here, where the reports were finalized nearly a decade ago and the Government's concern about confidentiality relates only to unspecified and

unrelated future OPR investigations.  And again, the names of the witnesses are already redacted and will remain confidential.

Although "documents . . . obtained through discovery . . . are afforded a stronger presumption of privacy, as those materials typically are not publicly accessible," *Friedman*, 672 F. Supp. 2d at 61, the Government cannot simply rest on the "default" protections to the Privacy Act without articulating any concrete prejudice that would arise from disclosure.  Accordingly, this factor tilts in favor of unsealing.

5.  Purposes for which the Documents were Introduced

The final factor, the purposes for which the documents were introduced, considers the subject matter of the documents and their relation to the litigation as a whole.  *Guttenberg v. Emery*, 26 F. Supp. 3d at 96 ("The last factor concerns the subject matter of the material sought to be sealed.  The more relevant a pleading is to the central claims of the litigation, the stronger the presumption of unsealing the pleading becomes." (citation omitted)).

While the Government is correct that "[t]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access," Resp. at 28 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)), its assertion that "the documents appear to have been unnecessarily introduced into the judicial proceedings by Zanders simply so that he could argue for their unsealing," *id.* at 34, is entirely unwarranted.  The Court does not believe that Zanders's inclusion of the Records as exhibits to his motion was irrelevant to the relief he sought or included in bad faith.  *Cf. League of Women Voters of United States v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020) (noting that there may be an exception from treatment as a judicial record "for material inserted into a court filing in bad faith").  Because Zanders's motion attempted to undermine the reliability of the drug testing in

22

his case by showing a pattern of misconduct by Fuentecilla, evidence establishing that pattern was obviously relevant. *See* Mem. Op. at 7. The Government's speculation about Zanders's ulterior motives is unconvincing.

It is true, however, that the substance of the Records is highly attenuated from the merits of the criminal case. In *Hubbard*, the Circuit found it highly persuasive that "the documents here were not determined by the trial judge to be relevant to the crimes charged; they were not used in the subsequent 'trial'; nor were they described or even expressly relied upon by the trial judge in his decision . . . . Their only use . . . was to assist the court in its determination of whether the search and seizure were unlawfully overbroad." *Hubbard*, 650 F.2d at 321; *see also Gilliard v. McWilliams*, 2019 WL 3304707, at *5 ("There is less of a pressing concern to unseal pleadings if they are not relevant to the claims, such as if the documents were not described or expressly relied on in the trial judge's decision or if the documents were not used in subsequent proceedings . . . ." (cleaned up)). Here, the purpose of the Records was solely to establish the history of misconduct by Fuentecilla prior to his employment at the Dulles lab, in order to suggest that his minimal connection to the *Zanders* drug test rendered it unreliable. The Records had no direct bearing on the charges against Zanders and were determined to be so minimally relevant as to be inadmissible, Mem. Op. at 10–11, and they were not relied on in any subsequent proceedings, including Zanders's plea agreement and sentencing. Such a weak connection to the merits of the case weighs against unsealing.

\*     \*     \*

Although the question is close, after weighing the factors together, the Court believes that sealing is not warranted. Although the details of the Records have not been made publicly available and were only tangentially relevant to the underlying case, there are no third-party

objections or convincing privacy interests advanced.  In contrast, there is some amount of public interest in the Records and an indisputable interest in monitoring the evidentiary determinations of the judicial branch, and the most sensitive portion of the documents—the names of the witnesses and investigators—had already been redacted.  The Court will therefore grant the petition and order the exhibits unsealed.

### IV.    CONCLUSION

For the foregoing reasons, the Petition to Unseal (ECF No. 1) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 13, 2022                                                        RUDOLPH CONTRERAS
                                                                            United States District Judge

24